## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

**ARDIT LIKA**                                                          **PETITIONER**

**V.**                                              **Cause No. 5:26-cv-00003-DCB-BWR**

**RAFAEL VERGARA,**                                                     **RESPONDENT**
*Warden of Adams County Correctional*
*Center*

### REPORT AND RECOMMENDATION

28 U.S.C. § 2241 Petitioner Ardit Lika moves for a temporary restraining order. The Motion for Temporary Restraining Order [5] should be denied first because the arguments in the Motion and Petition [1] appear moot. Petitioner now has a final order of removal. Pet'r Rebuttal [14] at 10. The Petition and Motion for Temporary Restraining Order challenge detention under 8 U.S.C. § 1225(b)(2)(A), which governs detention pending a determination of removability.

Assuming Petitioner's arguments concerning application of § 1225(b)(2)(A) are not moot, Petitioner has not shown a substantial likelihood of success on the merits of his claims. Petitioner's statutory arguments are foreclosed by *Buenrostro-Mendez v. Bondi,* 166 F.4th 494, 498 (5th Cir. 2026). Petitioner's due process arguments rely too heavily on *Zadvydas v. Davis,* 533 U.S. 678 (2001) which is a post-removal-order case, while not even citing *Demore v. Kim,* which addresses detention pending a removal determination under § 1225(c). In *Demore,* the Supreme Court "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process" and said that since *Mathews v. Diaz,* 426 U.S. 67, 79-80 (1976), "this Court has firmly and repeatedly endorsed the proposition that Congress may

make rules as to aliens that would be unacceptable if applied to citizens." *Demore,* 166 F.4th at 522-23. Also, Petitioner urges the Court to apply the three-part balancing test from *Mathews v. Eldridge,* 424 U.S. 319 (1976) but cites no authority from the Supreme Court or Fifth Circuit which tells the Court to do so. The Supreme Court addressed due process challenges to immigration detention statutes in *Zadvydas* and *Demore,* and in neither did the Supreme Court cite or expressly apply *Mathews v. Eldridge*'s test.

## I. BACKGROUND

Petitioner is a citizen of Albania who entered the United States illegally on October 16, 2023. *See* Notice to Appear [1-2] at 2; Order of Release on Recognizance [1-1] at 2. On October 17, 2023, the Department of Homeland Security (DHS) charged Petitioner with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* Petitioner was served with a Notice to Appear for removal proceedings and released on his own recognizance. *Id.* At some point, Petitioner filed an application for asylum and withholding of removal. Pet. [1] at 1.

On December 19, 2025, U.S. Immigration and Customs Enforcement (ICE) encountered and detained Petitioner because, upon inspection, ICE determined that Petitioner was an alien present in the United States who had not been admitted or paroled. Notice to Appear [1-2] at 2. Petitioner was detained after "the current Presidential Administration began detaining illegal alien residents . . . for removal

2

proceedings without bond, rather than bonding and releasing them." *Buenrostro-Mendez,* 166 F.4th at 498:

> From 1997 to 2025, successive presidential administrations and many immigration judges treated unadmitted aliens as being subject to § 1226(a) rather than § 1225(b)(2). But, in July 2025, the Board of Immigration Appeals (BIA) decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, which reconsidered the statutory framework and concluded that aliens who enter the United States without inspection and admission are subject to mandatory detention under § 1225(b)(2). In reaching that conclusion, the BIA explained that "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'" *Hurtado,* 29 I. N. Dec. at 228. Accordingly, unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States. *Id.* at 225.

> Since DHS began to detain unadmitted aliens under § 1225(b)(2)(A), well over a thousand aliens have filed habeas corpus petitions seeking bond hearings. In most of these cases, the district court found in favor of the petitioner. *See Barco Mercano v. Francis,* No. 25-cv-6582, --- F. Supp. 3d ---, ---, 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025) (listing 350 decisions that found for the habeas petitioner).

*Id.* at 500.

Petitioner filed his § 2241 Petition on January 8, 2026, and Motion for Temporary Restraining Order on January 29, 2026. Petitioner seeks an order providing for his immediate release from detention and an injunction against re-detaining him, or a bond hearing within seven days and an injunction prohibiting his transfer outside of the Southern District of Mississippi while his Petition is pending. Pet. [1] at 20. Petitioner's Motion for Temporary Restraining Order provides that "[s]ince the filing of the petition for habeas, an internet-based hearing was conducted where the Immigration Judge determined Petitioner did not meet an exception to the

asylum bar." Pet'r Mot. [6] at 10.

With the Response, Respondent offered an immigration judge's January 15, 2026 order that provides, "[a]t the January 14, 2026, bond hearing, the Court granted the respondent's request to withdraw his motion for bond and custody determination." Resp't Ex. [8-2] at 1. Petitioner states in rebuttal that he was granted withholding of removal on January 15, 2026. Pet'r Rebuttal [14] at 10. Petitioner submits that since he "did not appeal this decision, he now has a final order of removal." *Id.* Petitioner asserts that he was granted protection under 8 U.S.C. § 1231(b)(3) "which provides for a 'withholding of removal' (non-refoulement) to a country where an alien's life or freedom would be threatened based on race, religion, nationality, membership in a particular social group, or political opinion." *Id.*

The Petition advances three Counts. Count One asserts that Petitioner is eligible for release on bond under 8 U.S.C. § 1226(a) because he was residing in the United States for over two years when ICE detained him. Pet. [1] at 7-16: Pet'r Rebuttal [14] at 1-2, 8-10.

Count Two alleges a violation of procedural due process, invoking *Zadvydas* and the three-part balancing test from *Mathews v. Eldridge Id.* at 17; Pet'r Rebuttal [14] at 12. Petitioner asserts that "his continued detention, without any ability to articulate that he is neither a flight risk or danger to the community, undermines his fundamental liberty interest in being free from restraint[,]" and "violates the Fifth Amendment as applied to him." Pet. [1] at 17-18; Pet'r Rebuttal [14] at 12. Petitioner

4

alleges that "[f]undamental fairness requires, at a minimum, a meaningful opportunity to be heard before a neutral adjudicator when the government restrains physical liberty for a prolonged period." *Id.*

Count Three alleges a violation of substantive due process and also relies on *Zadvydas*. Pet. [1] at 18-19. Petitioner quotes *Zadvydas* for the point that

> [t]he Fifth Amendment's Due Process Clause forbids the Government to "depriv[e] any "person . . . of . . . liberty . . . without due process of law." Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects.

533 U.S. at 690.

Petitioner claims that although "'[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings,'" "'the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.'" Pet. [1] at 19 (quoting *Hernandez v. Sessions,* 872 F.3d 976, 994 (9th Cir. 2017)). Petitioner asserts that "[a]bsent any mechanism for individualized review, Petitioner faces a substantial risk of prolonged or indefinite detention under penal-like conditions without any finding that his confinement is necessary to serve the government's legitimate interests." Rebuttal [14] at 11.

Petitioner represents that he "is neither dangerous or a flight risk, as he has two immediate family members with Lawful Permanent Resident status," and he

"appeared at all his immigration hearings and complied with all the in person reporting requirements with ICE." Pet. [1] at 20. Petitioner alleges that continuing to detain him when "he has not engaged in any behavior that would otherwise cause a change in custody but for a change in the Government's interpretation of the law" is not "related to the factors traditionally analyzed for civil immigration detention [and] is fundamentally at odds with the Constitution's due process provisions." *Id.* at 19.

The introduction to Petitioner's Memorandum in support of his Motion for Temporary Restraining Order reurges the statutory arguments made in Count One of the Petition. Pet'r Mem. [6] at 2-3. The Memorandum's body requests emergency relief on the basis that Petitioner's detention violates procedural and substantive due process, but the argument section is titled procedural due process, and there is no substantive due process argument section. *Id.* at 4-7. The Memorandum cites *Zadvydas* and analyzes the factors from *Mathews v. Eldridge* in Petitioner's favor to conclude that Petitioner has a liberty interest in being free from detention that outweighs DHS's interest in detaining him. *Id.* Petitioner's Motion for Temporary Restraining Order adds to the due process argument in the Petition by string citing district court opinions that Petitioner says, "found the Government failed to consider that the Petitioner had an unequivocable liberty interest that was created when the Petitioner was released on his own recognizance prior to the beginning of their 'new' interpretation of Section 1225(b)." Pet'r Mem. [6] at 5 (collecting cases from district

6

courts in the Northern and Western Districts of Texas and Northern and Eastern Districts of California).

## II. DISCUSSION

A preliminary injunction is "an extraordinary remedy." *Miss. Power & Light Co. v. United Gas Pipeline Co.,* 760 F.2d 618, 621 (5th Cir. 1985). An applicant for either a temporary restraining order or a preliminary injunction has the burden of proving four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) the threaten to the movant outweighs any damage the injunction might cause to the opponent; and (4) granting the injunction will not disserve the public interest. *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1987). "The decision to grant or deny a preliminary injunction lies within the discretion of the district court[.]" *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984). If a movant fails to show a substantial likelihood of success on the merits, "no additional analysis is required," as that alone is sufficient to justify a denial of a preliminary injunction. *Perez v. City of San Antonio*, 163 F.4th 110, 134 (5th Cir. 2025).

A. **The Petition and Temporary Restraining Order Appear Moot**

The arguments in the Petition and Motion for Temporary Restraining Order appear to be moot because Petitioner is no longer being detained under 8 U.S.C. § 1225(b)(2)(A), and the argument in the Petition and Motion for Temporary Restraining Order concern detention under § 1225(b)(2)(A). Petitioner now has a final

order of removal and "was granted protection pursuant to 8 U.S.C. § 1231(b)(3)." Pet'r Rebuttal [14] at 10. 8 U.S.C. § 1231 "governs detention following a final order of removal." *Demore,* 538 U.S. at 527. Under § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days[.]" 8 U.S.C. § 1231. Ninety days have not passed since Petitioner received a "final removal order" around January 15, 2026. Petitioner's detention pending a determination of removability under § 1225(b)(2)(A) lasted twenty-seven days.

B. **Petitioner Has Not Shown a Substantial Likelihood of Success on His Statutory and Due Process Arguments Challenging 8 U.S.C. § 1225(b)(2)(A) Detention**

1. *Buenrostro-Mendez* currently forecloses Petitioner's statutory arguments

Assuming the Petition and Motion for Temporary Restraining Order are not moot, Petitioner's statutory arguments that he should not have been detained under 8 U.S.C. § 1225(b)(2) are currently foreclosed by the Court of Appeals for the Fifth Circuit's February 3, 2026 decision in *Buenrostro-Mendez.* The mandate in *Buenrostro-Mendez* has not issued, and according to the publicly available docket, the appellees have until March 23, 2026 to file a petition for rehearing/petition for rehearing en banc.

*Buenrostro-Mendez* held that an "alien present in the United States who has not been admitted" by lawful means, *see* 8 U.S.C. §§ 1225(a)(1), 1101(a)(13)(A), is an "applicant for admission" deemed to be "seeking admission," and unless the alien shows his or herself to be "clearly and beyond a doubt entitled to be admitted," he or

8

she "shall be detained for a proceeding" to determine inadmissibility or deportability. *Id.* at 498, 502-08. Petitioner's Rebuttal, filed one month after the decision in *Buenrostro-Mendez,* does not mention *Buenrostro-Mendez.*

2. Petitioner has not shown a likelihood of success on his due process claims

Petitioner has not shown a likelihood of success on his due process claims because he has overlooked the "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore,* 538 at 522-23, 526. Petitioner relies on *Zadvydas,* a post-removal-order case concerning detention under 8 U.S.C. § 1231(a)(6) without pointing out how *Zadvydas* was distinguished in *Demore* and then *Jennings v. Rodriguez,* 583 U.S. 281 (2018). A discussion of *Zadvydas, Demore,* and *Jennings* shows why the Supreme Court has found the reasoning in *Zadvydas,* a post-removal-order detention case, inapt in the context of detention pending a determination of removability.

In *Zadvydas,* the Supreme Court found a procedural due process violation where the petitioners had final orders of removal, but their removal was "no longer practically attainable" because either countries refused to accept them or had no repatriation agreement with the United States. *Zadvydas,* 533 U.S. at 684-86, 690. Section 1231(a)(6) allowed the Attorney General 90 days to remove an alien after ordered removed, and after that, provided that certain aliens "may be detained." *Id.* (quoting 8 U.S.C § 1231(a)(6)). The Supreme Court found ambiguity in § 1231(a)(6)'s

9

use of "may" and for due process purposes "construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal[.]'" *Jennings,* 583 U.S. at 298-99 (quoting *Zadvydas,* 533 U.S. at 699). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas,* 533 U.S. at 699-700.

Petitioner misquotes *Zadvydas* as providing that "'[c]ivil immigration is permissible only to prevent flight or protect against danger to the community.'" Pet. [1] at 19. **That quote is not in _Zadvydas_**. Instead, the government offered two justifications for detention in *Zadvydas*: preventing flight and preventing danger to the community. *Zadvydas,* 533 U.S. at 690. The Supreme Court said in *Zadvydas* that it was not "consider[ing] terrorism or other special circumstances where special arguments might be made for forms of preventive detention and for heightened deference to the judgments of the political branches with respect to national security." *Id.* at 696.

*Demore* found that the due process problem in *Zadvydas* did not exist under 8 U.S.C. § 1226(c), which governs detention pending a determination of removability of aliens who have committed one of a specified set of crimes. *Demore*, 538 U.S. at 513. The petitioner in *Demore,* a permanent resident alien, argued that his detention violated due process because the government "had made no determination that he posed either a danger to society or a flight risk." *Id.* at 514. The petitioner in *Demore*

10

argued that bond hearings were effective and not burdensome. *Id.* at 528. The Supreme Court responded that since 1976, "this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Id.* at 522 (relying on *Diaz,* 426 U.S. at 79-80). The Supreme Court found it established since 1952 that "'any policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.'" *Id.* at 521-22 (quoting *Harisades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)). The Supreme Court found it "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Id.* at 523 (quoting *Reno v. Flores,* 507 U.S. 292, 306 (1993). But followed that statement by explaining that, "[a]t the same time, however, this Court has recognized detention during deportation proceedings as constitutionally valid aspect of the deportation process." *Id.* at 523.

*Demore* found *Zadvydas* "materially different from the present case" because in *Demore,* "the aliens challenging their detention following final orders of deportation were ones for whom removal was 'no longer practically attainable.'" *Id.* at 527. The Supreme Court also distinguished *Zadvydas* because "the period of detention at issue in *Zadvydas* was 'indefinite' and 'potentially permanent,'" while detention of the *Demore* petitioners pending a determination of removability "is of a much shorter duration." *Id.* at 528. The Supreme Court found that "[u]nder § 1226(c),

11

not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in *Zadvydas*." *Id.* at 529. Petitioner's detention pending a determination of removability under § 1225(b)(2)(A) lasted twenty-seven days.

In *Jennings,* the Supreme Court found "*Zadvydas*'s reasoning   . . particularly inapt" in the context of detention pending a determination of removability under 8 U.S.C. § 1225 and § 1226. "The issue in *Jennings* was whether the constitutional avoidance canon required the government to grant periodic bond hearings to aliens facing prolonged detention under [8 U.S.C.] § 1225 and § 1226." *Buenrostro-Mendez,* 166 F.4th at 505. *Jennings* answered that question, "no" and found that aliens lacked a statutory right to bond hearings under §1225(b)(1) and (b)(2), concluding that

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings,* 583 U.S. at 297.

*Jennings* rejected the argument that *Zadvydas* "essentially grant[ed] a license to graft a time limit onto the text of § 1225(b)." *Id.* at 298-99. The Supreme Court reasoned that Sections 1225(b)(1) and (b)(2) make an "express exception to detention," temporary parole, which "implies that there are no *other* circumstances under which

12

aliens detained under § 1225(b) may be released." *Id.* (emphasis in original).

In sum, Petitioner's heavy focus on *Zadvydas* without acknowledging how the Supreme Court found its reasoning inapt in the context of detention pending a determination of removability means Petitioner has not shown a likelihood of success on the merits. Also, Petitioner concludes that the three-part-balancing test in *Mathews v. Eldridge* should be applied but does not tell the Court why. The Supreme Court, facing due process challenges to immigration detention statutes in *Zadvydas* and *Demore*, did not reference or expressly apply *Mathews v. Eldridge'*s test. The Supreme Court "ha[s] never viewed *Mathews* [*v. Eldridge*] as announcing an all-embracing test for deciding due process claims." *Dusenbery v. United States*, 534 U.S. 161, 168 (2002).

Petitioner offers a string of district court opinions from the Northern and Western Districts of Texas and the Northern and Eastern Districts of California, without analysis, for the proposition that a due process violation occurs where an illegal alien is released on his own recognizance, resides in the United States, and then is detained under § 1225(b)(2). Pet'r Mem. [6] at 5. Petitioner cannot cite a Supreme Court or Fifth Circuit case for this point because there is not one. A string of district court opinions from the District of Arizona, Eastern District of California, Middle District of Florida, Southern District of Florida, Eastern District of Missouri, Western District of Tennessee, Northern District of Texas, and Southern District of Texas have rejected Petitioner's view that detention of illegal alien residents without

13

a bond hearing under 8 U.S.C. § 1225(b) violates due process. *See, e.g., Guillen v. Johnson,* No. 1:26-CV-10-CMS, 2026 WL 601881 (E.D. Mo. Mar. 4, 2026); *Juarez-Chrisostomo v. Dickey,* No. 4:26-CV-00979, 2026 WL 593537 (S.D. Tex. Mar. 3, 2026); *Vargas-Sanchez v. Noem,* No. CV-26-00003-PHX-MTL (JFM), 2026 WL 593050 (D. Ariz. Mar. 3, 2026); *Hernandez v. Miami Field Officer Director,* No. 26-CV-20440, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026); *Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542 (D. Ariz. Feb. 24, 2026); *Garcia v. Dickey,* No. 4:26-CV-00601, 2026 WL 508307 (S.D. Tex. Feb. 24, 2026); *Breijo v. Ripa,* No. 2:26-CV-68-KCD-DNF, 2026 WL 507635 (M.D. Fla. Feb. 24, 2026); *Pineda v. Noem,* No. 1:26-CV-00016-CMS, 2026 WL 496680 (E.D. Mo. Feb. 23, 2026); *Gonzalez v. Ladwig,* No. 2:26-cv-02017-MSN-ATC, 2026 WL 413602 (W.D. Tenn. Feb. 13, 2026); *Zhuang v. Bondi*, No. 1:25-CV-00201-CMS, 2026 WL 352872 (E.D. Mo. Feb. 9, 2026); *Chavez v. Noem*, No. CV-26-00323-PHX-MTL (JFM), 2026 WL 381618 (D. Ariz. Feb. 9, 2026); *D.M.R.D. v. Andrews*, No. 1:26-CV-00081-WBS-CSK, 2026 WL 353405 (E.D. Cal. Feb. 9, 2026); *Garcia De La Cruz v. Bondi*, No. CV H-25-5577, 2026 WL 309939 (S.D. Tex. Feb. 5, 2026); *Guzman-Diaz v. Noem*, No. 3:25-CV-3008-X-BN, 2026 WL 309938 (N.D. Tex. Feb. 5, 2026); *Singh v. Noem*, No. 1:26-cv-036-H, 2026 WL 306395 (N.D. Tex. Feb. 3, 2026); *Martinez Rodriguez v. Warden, Bluebonnet Det. Facility*, No. 1:26-CV-044-H, 2026 WL 278020 (N.D. Tex. Feb. 3, 2026); *Negrete Ramirez v. Noem*, No. 1:25-CV-00206-CMS, 2026 WL 251725 (E.D. Mo. Jan. 30, 2026); *Morales v. Noem*, No. 25-62598-CIV, 2026 WL 236307 (S.D. Fla. Jan. 29, 2026); *Martinez v. Villegas*, No. 1:25-

14

CV-256-H, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, 2026 WL 81679 (N.D. Tex. Jan. 9, 2026).

## III. RECOMMENDATION

It is recommended that Petitioner's Motion for Temporary Restraining Order [5] be denied because Petitioner has not shown that his claims have a likelihood of success on the merits.

## IV. NOTICE OF RIGHT TO OBJECT

Within fourteen days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A party may respond to another party's objections within 14 days after being served with a copy of the objections. *Id.* The district judge will determine de novo any part of the Report and Recommendation that has been properly objected to. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the Report and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *Id.*

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. A district judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs.*

*Auto. Assoc.,* 79 F.3d 1415, 1428-29 (5th Cir. 1996), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1).

**SIGNED,** this the 16th day of March 2026.

s/ *Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE

16